Good morning, Your Honors, and may it please the Court, my name is Lydia Brandt. I represent Mr. Crutsinger. The motion that was presented to the District Court was a 60B motion, and that 60B motion is procedural in nature. It is not a substantive attack on the merits-based determination of the underlying Sixth Amendment claim that was originally raised in the habeas petition. The question that was presented there was whether a denial of representation services under Section 3599 was a structural defect in the integrity of the proceedings. And it is our position that it is. A yes just came down. Did you? I didn't remember your briefing to talk about structural defect. It's in here. The word structural? It is. Okay. That's right. Don't worry. Okay. The issue is whether a yes just presented extraordinary circumstances that allowed the petitioner that he was denied before. How do you distinguish the Supreme Court's decision in Gonzalez v. Crosby on the extraordinary circumstances piece of it? Well, our position is that the denial of representation of services is comparable to, for example, the fraud example that they used. You can have an underlying merits determination, but if that merits determination was obtained by fraud, that procedural issue is one that allows the Court to set it aside. Well, the Court's – the Supreme Court seemed to say, I thought in Gonzalez, that this was a mere change in law. And at the time in that case, the Eleventh Circuit had held one thing, and the Supreme Court later said that that was wrong, that the Eleventh Circuit's law was wrong. But that was the law that was existing at the time the Eleventh Circuit ruled, and the Court said a change in the law is not extraordinary circumstances. We're not talking about a change in substantive law. We're talking about a change in the procedural posture of the case. This issue with respect to funding is antecedent to the filing of a habeas petition. So essentially what you've got under McFarland, you have got the Supreme Court saying that counsel is entitled to representation services. And that's not just representation services in the sense of providing an attorney, but it's also providing an attorney with the necessary ancillary services, whether that be for investigators or experts. The other question I get, and the State didn't raise this, was issue preclusion. You raised issue preclusion. The State didn't raise that. But how is this different from the same argument you presented to this Court that the Court wrote out, I don't know how you disagree with the Court's opinion, but then you took it up on cert, and it seems to me that we have a final decision on, rightly or wrongly, we have a final decision on this same issue. So what has changed? Well, what has changed is ayestas. It's the law. There's a change in the law. The procedural posture of the representation services, we're not talking about some underlying substantive merits determination. We've never gotten to the position of the true merits of the case because we never got funding in order to prove the elements of the case. My point is the only thing that changed, the standard by which courts judge these motions for attorneys' fees. Right. And I don't know what you put in your cert petition. I wasn't able to find it last night. But whether you included it or not, you could have included that in your cert petition. The Supreme Court looked at your ‑‑ we looked at it. We said the district court didn't abuse its discretion, didn't err in not granting funds. The Supreme Court looked at that, and it seems to me that's finality. And all we have now is you're asking us under ayesta to come back and ‑‑ or the district court to reconsider that request under a different standard of review. Isn't that right? Well, again, this is the procedural issue. We're not attacking the merits. I agree that your petition is not successive. I'm talking about the second half of Gonzales. Even if it's not successive, they said you ‑‑ the petitioner lost in Gonzales because it was an extraordinary circumstance. I agree with you it's not successive. Well, we have ‑‑ we've never gotten to that merits determination. What the district court said is it didn't have jurisdiction. Well, it had jurisdiction, the first habeas petition you had, it had jurisdiction over funding. The district court said no, we said no, and the Supreme Court didn't grant cert. Because you weren't ‑‑ you and the district court, and I don't mean you personally, the court, wasn't using the correct standard with respect to applying whether or not Mr. Crutchfield ‑‑ And you had an opportunity to take that up, and you didn't win on it. So now you're just asking to come back and apply a different standard of review. Well, but at the time, ayestas wasn't there. The law of the circuit at that time was this ‑‑ I just have a hard time squaring this with Gonzales versus Cosby on the extraordinary circumstances issue. Let me make sure I understand. Are you saying that post ayestas, the standard under the 3599 claim is just that the determination has to be made as to whether or not it's reasonably necessary, these funds that are requested, that prior to ayestas, we had been applying a different standard, which the Supreme Court determined was an incorrect standard. Is that right? That's correct. So now you want an opportunity to have the case sent back to the district court so that the district court can make a determination about whether or not it's reasonably necessary under the correct ‑‑ which is the correct standard under 3599. That hasn't happened because the district court determined that the claim was procedurally barred. I couldn't say it better. What we've got going on here is ayestas was keying off the original 3599 and what the district judge underlined the case. And, again, we're here on procedure, but if we want to move to actually what was happening, since you're saying the court and the district court denied funding, the court was requiring us to prove that the case was substantial before it would provide funding for us to go out and get experts and investigators to develop the extra record evidence to prove that the case was substantial. So we never got to the situation where we were able to develop the extra record evidence necessary to prove the elements of a Wiggins or a Strickland claim. Well, I hear your argument, but to Justice Graves, Judge Graves' point, the district court said, well, even if it's not ‑‑ he went ahead and ruled on the merits. He said maybe it's not procedurally barred. So the district court affirmatively ruled on the merits of the claim that you say you needed investigators for. So the district court went ahead and ruled on the ineffective assistance of trial counsel claim. How can the court rule on the merits? I hear your argument, but he did not rule because it was procedurally barred. He said on the merits, I don't need ‑‑ you're not entitled to the investigator and I'm going to reach the merits. So it wasn't based on a procedural bar in the district court. Is that correct? Yeah. It just skipped over everything. I mean, if it didn't have ‑‑ I agree, but it wasn't denied on the basis of procedural bar. Right. Okay. I just wanted that clear. So if it never ‑‑ if it didn't have jurisdiction to determine this procedural issue, it didn't have jurisdiction to then go beyond that. If it didn't have jurisdiction, it needs to just stop and say we don't have jurisdiction and dismiss the case. It went on to then rule incorrectly on the substantive merits of the claim, but it true merits of the claim because we were never able to provide extra record evidence for the court. So essentially, we've got a cart before the horse. We have to prove a substantial claim to get money to plead and prove a substantial claim. You had the opportunity to raise that in this Court. You had the opportunity to raise it in the Supreme Court, and for whatever reason the Supreme Court denied, sir. Well, you have to also remember the procedural history at the time. When we originally presented that to the district court, Martinez had a cert grant, but Martinez had not yet been decided by the court. And then what this court did is it came back and said, well, Martinez doesn't apply, but Trevino came in. And so we already have a judgment sitting here, and Martinez and Trevino are decided which says, yes, you can overcome procedural default and exhaustion by showing that state habeas counsel is ineffective. So you had a determination that was made by the trial court before those two key pieces were in place or decided by the U.S. Supreme Court, although we did put the district court on notice that Martinez was decided, and they just skipped over it and said But there's no point in remanding after Trevino because the district court had already decided the issue on the merits. No, it did not decide the issue on the true merits. If we don't have funding to get investigative and expert assistance to develop and present extra record evidence, we don't have the true merits being decided because the only thing that is before the court is the record that was already developed at trial. I hear your argument. I'm just talking about the procedural posture of this. But what I'm saying to you is the court could not decide the true merits of the claim because it didn't have all the information. I take that's what you're arguing. Yes. I'm just talking about what the procedural posture of this is. Say again? I'm just talking about what the procedural posture is. You disagree that the district court had a valid merits determination, but point of fact, the district court did not deny funding on the basis of a procedural bar. Because it skipped over the or didn't have in front of it Martinez and Trevino and then later Aiestas. So it just applied what this circuit's precedent was, which is what Aiestas said, was an incorrect standard. And so essentially the court was saying its hands are tied, this is what the Fifth Circuit says, and purported to do a merits review because it was really using the standard that was there. If the claim is unexhausted and procedurally defaulted, then it can't provide funding. And then it went on to say, oh, by the way, you didn't raise a substantial claim, which we could not raise because we didn't get the money. So when it went to this issue about a purported merits review, that's all it was, was a purported review. It was never a review in fact because it didn't have all the information. Did you raise in your cert petition that this court and the district court applied the wrong standard in ruling on the application for funds? I believe we did. I have not looked at that cert petition in a while. But we have consistently argued in Kretsinger and a number of other cases, both to the U.S. Supreme Court and to this court, that the standard that's being applied is incorrect because the court is, one, requiring us to prove a substantial claim when, in fact, we can't prove a substantial claim unless we get the funding. And then in some of the cases, as here with Kretsinger, Martinez and Trevino had not yet been decided, which would have allowed them. Is there any indication that ISDIS should be applied retroactively in habeas petitions? Well, I think what ISDIS was doing was keying off 3599. Right. Does it apply retroactively in habeas petitions? Yeah, I think so. What's the best case that says that? We can reopen all these formally, finally determined habeas cases on the basis of ISDIS. Well, I think Gonzales provides that. I mean, Gonzales is allowing when there is a defect in the integrity of the proceedings that you go back and you can set the judgment aside. I mean, that's the fraud case that they had in there. Even though there was a merits determination in the fraud case, what that and I think the other one was Viala. And Viala said that a party is allowed to ask a court to reevaluate the merits of a case as long as the 60B alleged a non-merits defect. And we're not getting to the merits of the underlying 60B. I agree with you that it's not successive. Okay. It's another whole piece of Gonzales. Because what had happened in Gonzales is the district court in the Eleventh Circuit had said it's barred by limitations. And then after that, the Supreme Court came down with R2s and said, no, the Eleventh Circuit's wrong. It's not barred by limitations. And Justice Scalia, writing for a majority of the Court, said the change in the law brought by R2s is not an extraordinary circumstance. He said it would not justify reopening long-ago grants of habeas relief based on a lower court's unduly generous interpretation. He went on. And then he said the change in the law worked by R2s is all the less extraordinary in Petitioner's case because of his lack of diligence in pursuing review of the statute of limitations issue. I don't know whether he pursued it or not. We did pursue it. But the Supreme Court denied relief. But we have pursued — well, I mean, we can't — they only take one percent of the cases. It seems to me this is squarely fits within Gonzales v. Crosby on the extraordinary piece of it. I disagree. I mean, we were very diligent in pursuing the issue of denial of funding over and over and over again. I mean, we did it originally when the case was before the trial court. So if we pull your petition and it's not in there, that's one thing. But if we pull your petition and it's in there, what do we do to the fact that the Supreme Court denied cert in your case? That's not a ruling on the merits. That's just a denial. We don't know why they denied the cert petition. Okay. So why is it not just a change in the law that Crosby says isn't good enough? Because this is procedural and not substantive. Is limitations procedural or substantive? Well, but you went on to point out in there that the petitioner in that particular case didn't pursue his claim diligently, and Krutzinger did here. This hasn't sat and been left in. Did you write in the Supreme Court that this Court applied the wrong standard? Instead of saying reasonably necessary, we applied the standard that they struck down in ISDA? I believe we did, and that's the reason we ended up getting mentioned in the ISDA's decision. The Court would not otherwise have cited to it. Well, it may have read our case law and said they did it again. I'm sorry. Say again. It could have just read our cases and said here's another example of where they did it, because that was in our prior opinion in this case. Well, I know that in the ISDA's case they were aware of Krutzinger, the attorney who was working on the ISDA's case at the Supreme Court level had helped us with respect to Krutzinger. So he was very aware of what was going on in Krutzinger, and then, I mean, the Supreme Court didn't take us in Krutzinger, but they did take us in ISDA's because we had the same problem in ISDA's that there was in Krutzinger, which was this substantial threshold showing. We have never sat on our rights with respect to Krutzinger. I'm not suggesting you did or intentionally you wouldn't. Okay. I understand. I just, it sounds like from what you're saying you would agree this wasn't successive. I just want to make sure, because in the government's brief it had used the word that we had conceded. We have never conceded that this was a successor petition. And I also want to talk a minute about Clark, and the government was talking about Clark as saying that case was based solely on a conflict of interest. On conflict-free counsel. That's conflict-free counsel. That seems to be a dispute. But representation. But you've conceded that Mr. Krutzinger was not deprived of all representation and Clark seems to go only to conflict-free counsel, not to deprivation of all counsel. Well, but I think we have to look at a bigger picture here, and we're looking at representation services. And representation services isn't just limited to counsel. If I don't get the necessary funding that I need for investigators and experts, I don't have the background to represent a client, to do the multigenerational social histories that are required, or to do mental health evaluations. And so without those tools, essentially he's being denied representation services because I have no way to move forward with the case to bring the extra record evidence in. I can't evaluate with the prior experts. How does Clark apply to that, though? Because Clark was a case about conflict, conflict-free counsel. So how does Clark even apply? Clark applies because it stands for the proposition that the Petitioner was being denied counsel. Counsel couldn't go forward and represent his client because he was both State and Federal habeas counsel. And so it was the broader picture that what McFarland was saying was an attorney when a client is denied counsel, that's a denial of representation services. But that's not the only way that representation services can be denied. McFarland also says that without representation, including the services of investigators and experts, it makes it unlikely that capital defendants will be able to file successful petitions for collateral relief. And I'm looking on pages 32 and 33 of my brief. So, again, without the necessary tools, and that's the ancillary services, there is a denial of representation services because I can't do the job that I need to do to prove the elements of deficient performance and prejudice. I don't have the necessary training in order to evaluate the mental health evidence. I don't have all of the credentials that a forensic social worker does and which the guidelines are now saying that type of forensic social worker should be used as a mitigation investigator to do the kind of multigenerational investigation to pull out the background of the particular defendant. So that is a denial of representation services. Any other questions? Thank you, Ms. Brandt. You've saved time for rebuttal. Ms. Vendel? May it please the Court. Krotzinger asked this Court to find that a district court's entirely discretionary decision to deny funding is a defect in the integrity of the proceedings. But in order to do so, this Court would have to look at a funding decision in a vacuum and would have to ignore its inevitable results. Indeed, Krotzinger necessarily seeks to add new evidence to either augment the de novo merits adjudication that he has already received or to add an entirely new claim at this late stage in the proceedings. In either instance, his request is plainly successive, and this Court should affirm the district court's transfer order. Before turning to the defect issue in this case, I'd like to briefly address Judge Owen's questions about the extraordinary circumstance. And although the district court did not reach that alternative finding in this case, we wholeheartedly agree that Gonzalez is essentially indistinguishable from this case and also from this Court's cases in Diaz and in Adams, where we have found again and again that changes in decisional law do not, as a matter of law, establish extraordinary circumstances. As Judge Owen pointed out, a yes does nothing more than a change of a decisional law, again, which is precisely what occurred in Gonzalez itself, and ultimately cannot satisfy the basis of an extraordinary circumstance. But turning to the — Why did you argue issue preclusion? Because the argument raised here is a slightly different argument from what was raised in the Fifth Circuit — in this Court and in the Supreme Court. That focused mostly on the fact of — and also to clear up a little bit about the procedural history here. When the district court initially denied funding, that was prior to Martinez and Trevino at all. However, in his 59E denial, in which Kretzinger did challenge that denial once again, the Court considered Martinez, even though cert had only been granted. So while it had not come out, the Court certainly did address any impact Martinez may have. And ultimately, it found that given that it had already extensively discussed the merits of the claim and found it lacking, that that plainly meritless nature of the claim means that they had an insubstantial claim under Martinez, which again continued to support its decision to deny funding. On appeal to this Court — But that determination was made without the benefit of the evidence that Kretzinger claims could be discovered if he had — if he got the funding and had an opportunity to pursue that. You agree that that's what happened? I would agree with that, Your Honor. However — And that the only determination that needed to be made in connection with whether or not he got the funding for that was a determination about whether or not it was reasonably necessary under 3599. That's the standard that should have been applied in making that determination. Is that right? That's correct, Your Honor. Because that's ayestas. Yes. And you further agree that that didn't happen? I do not agree with that, Your Honor. And so why shouldn't we send it back so that the district court can, in the first instance, make that determination? Because the district court's decision and this Court's affirmance of the district court's denial remain correct under ayestas. Ultimately, in the 59e, he found, again, the plainly meritless nature of the claim is insubstantial. And ayestas instructs that that's precisely the sort of guiding principles that we must consider. Meritless nature of the claim for the additional funding? Yes. Which claim are you talking about? The claim that he initially sought funding for. So when comparing the initial funding motion to what was ultimately pleaded, there were new facts, there were new exhibits presented in that that were not presented to the State court when they raised a failure to investigate claim. The district court considered all of that, even though it probably should have been barred under Penholster. And as the district court noted, it was barred under 2254e2. Despite that, he received a de novo adjudication on that claim and considered, in fact, Dr. Goodness's report, which was the basis for the ineffective assistance of counsel claim. In that, it was plain on the record before the court, including the extra record evidence that was presented in Federal court that had not been presented in State habeas court, the trial counsel's investigation was more than reasonable. But his claim is, at least in part, that the evidence needed to establish an ineffective assistance of counsel claim is evidence that he needs to get the funding to investigate and explore. Right? In part. I mean, that's at least in part the basis for the ineffective assistance of counsel claim. In part. But it was based on information that was known to trial counsel. So he pointed to Dr. Goodness's report itself as the basis for the, quote-unquote, red flags that should have alerted trial counsel to further investigation. That report was both ordered by trial counsel and given to him. And because there was State habeas factual development, there were, in fact, trial counsel affidavits. Trial counsel himself noted that Dr. Goodness's report was not helpful to Krotzinger. And that's ultimately the way they didn't present her. And by extension, as the district court found, it also underlies why this is an even if he got the funding, it's highly unlikely, it's not possible that he could discover any new or additional mitigation evidence that should have been presented by an otherwise ineffective trial counsel. That's correct, Your Honor. Given what is on the record, there's nothing new that would undermine counsel's reasonable investigation in this case. And that is the operative question under Wiggins. Well, I want you to back up and answer my question. And let's focus like a laser here on the statutory request. He made a request under statute for funding. That was denied by the district court. That was appealed to this court. We, on the merits, affirmed that denial. That was taken to the U.S. Supreme Court. The Supreme Court denied cert. We now have Krotzinger coming back asking the district court to reconsider the Why is that issue? That issue. Forget everything else. Why didn't you argue that there's issue preclusion that's been litigated. You can't relitigate it. Because in terms of whether there's a defect or not, that question is ultimately did it preclude a merits review. And so the focus there is solely whether it did. I'm sorry. I've lost you. What defect are you talking about? I'm not talking to you. What defect are you talking about? The idea that this argument survives a successive prohibition. Forget that. Forget that entirely. Think with me. We already had a full review up and down of the denial of funding. On that issue, why did you not argue that whether this is successive or not, the issue of whether he's entitled to funding has been fully litigated and he lost. Why didn't you argue issue preclusion on that? That what new issues do we have on the funding issue? Just the arguments, Your Honor. And the reason we didn't was because we were reaching only the jurisdictional threshold question of whether this was a successive or not. And why didn't you think beyond that and make some alternative arguments? I'm really concerned that why are we having to look at the merits of a denial of a funding anew because the State didn't argue issue preclusion? Well, Your Honor, since the district court didn't reach any other questions beyond that jurisdictional question and because the parties, including Krotzinger, briefed only the successiveness issue, we limited ourselves also to that jurisdictional question because we don't believe there is jurisdiction here. You put all your eggs in one basket is your answer. That would be correct, Your Honor. No why? But, Your Honor, it is correct that the fact that this court and the Supreme Court have already appealed this and determined that there's no merit here and found that the district court's determination to You're saying the denial of cert is the determination that there was no merit? No, I apologize. I misspoke. They just declined to review this. But this court has thoroughly considered the decision and the district court definitely thoroughly considered the decision. And when it comes to the question of defect, the only question here is whether there is a non-merits-based defect. A review of the case law on this indicates that there are really two types of defect at play here. One of them is the far or narrow category. It is those things that really have been specifically enumerated to go to the true integrity of the proceedings. And those are things, like my opposing counsel pointed out, fraud. Again, there may be a merits adjudication in that case, but there's something brought to light in subsequent proceedings that we no longer trust the process. Similarly, as Your Honor pointed out with respect to the questions on Clark, the statutory right to conflict-free counsel, the underlying motivation for finding that was that we are not certain that we trust counsel to fulfill his ethical obligations in those situations. But apart from those very narrow circumstances, we're left with the standard enumerated in Gonzalez, which is did it preclude a merits determination. These things are like what happened in Gonzalez. Procedural dismissals, statute of limitations dismissals, where there was no merits adjudication whatsoever in Gonzalez. Under this type, it is clear, as this Court has made clear again and again, that you cannot simply just ask for a second chance to have the merits determined favorably, regardless of whether you characterize it as a procedural attack. As this Court warned in United States v. Villalba, it's important that we prevent claims of procedural defect from becoming a talisman that wards off the limitations against the success of prohibition. And turning here to the specific defect that's been alleged, the denial of funding, this Court's decisions in United States v. Villalba and Henry Robinson seem dispositive on this issue. In particular, the primary distinction between here and Clark is that right. That was a mandatory right to conflict-free counsel. Here, we are dealing with a matter of discretion. Even within 3599 itself, and despite Krotzinger's attempts to conflate the mandatory and discretionary nature of the claims, the right to appointed counsel is certainly mandatory, but the right to funding is an entirely discretionary decision by the district court, as affirmed by Aiesta itself, where it noted that you can even meet the reasonably necessary standard under the statute and the district court may still retain some discretion to deny. That is a dispositive difference between what the question is in this case and what the question was in Clark. Additionally, the very nature of the defect here is like that at issue again in United States v. Villalba and in Henry Robinson. In those cases, they were denials of evidentiary hearings and denials of discovery. Here, we have a denial of funding, and all of those, at the end of the day, simply request a fuller evidentiary development of a claim. Because of that, it is clear that as this court held in Robinson, this request is necessarily wrapped up with and dependent on... You're saying the denial of an evidentiary hearing is equal to or about the same as the denial of funding to explore and pursue potential mitigation evidence? You're saying those are the same? I would say they are the same, yes, Your Honor. One says, I have my evidence, and I just want a chance to present it. The other says, I don't even have it because you won't give me the funding to go get it. Those are two different things, don't you think? I think ultimately, I would disagree. Ultimately, in an evidentiary hearing, they are still developing evidence often. They are bringing in new extra record things that were not considered in state court. And given the particular nature of what we're supposed to be doing in federal habeas proceedings, that evidentiary development is supposed to be limited. What do you do about the DNA cases? Could you clarify? Well, I thought there were cases that say when you never had DNA testing and there's a motion to get DNA testing, that that doesn't necessarily attack the judgment. That's just, you know, I've never had access to DNA testing. And that's been granted in Rule 60B proceedings. Well, I believe, Your Honor, the 60B, the DNA proceedings still typically happen in state court. So, again, the defect question is focused on whether there was an antecedent defect that prevented a merits adjudication. DNA is ultimately tied to an actual innocence claim in federal court, which is not cognizable here, but for attempting to overcome a statute of limitations or procedural default. So, in that instance, it is also going to probably, at the end of the day, be most often tied to a procedural determination. Unlike here and to Judge Green's question earlier, yes, ultimately because they are seeking to develop evidence in federal court, I would say they are similar. At the end of the day, they are wrapped up with a claim. They are wrapped up with an ability to bring a claim. You get the language about it has to bar a merits determination out of Gonzales. That's how they state the claim. I'm sorry, the rule. They note that a procedural defect should preclude a merits adjudication. And, in fact, if you look at the citations. Where is that in the text? I'm sorry. Just point it out to me, please. I apologize, Your Honor. This case is a little bit long. I can't locate at the moment without reading a little bit more carefully, but I think the idea there is the things that they cite to as examples of, in fact, defects are things that preclude a merits review, including Gonzales itself. There was not an alternative merits determination on the time bar. I'll reread it. I don't think it's in there, but I'll reread it. It's certainly in this Court's opinions. I'm sorry. Which opinions? It's certainly in some of this Court's opinions, the idea of it precluding merits review. It's a procedural defect that precluded merits review. So the language is in the opinions somewhere, and I'm happy to file something explaining that further after if the Court desires. But, ultimately, given the examples cited by Gonzales and the facts of Gonzales itself, it did, in fact, preclude a merits review. It was a dismissal on the limitations issue alone, and that is why they found that there was a defect there. It's also why this Court has found time and time again that denial is a failure to exhaust, denials of procedural defaults. The question there, again, is what happened in the district court, and was there ultimately a merits adjudication? And it is clear here that there was. He received, in fact, the most favorable standard of review he could receive in Federal habeas proceedings with the de novo standard. Whether he seeks to add new evidence to continue to augment the claim that was already raised, that is clearly a 60B, excuse me, a successive petition, as Gonzales, again, noted. A claim under 60B2, seeking to proffer new evidence, is successive. A claim seeking to add a brand-new claim at this stage in the proceedings, as noted in In re. Robinson, is also plainly successive. And the question guiding our analysis here is whether allowing this as a 60B proceeding would ultimately be inconsistent with Congress's intent in narrowing the number of shots a Federal petitioner gets. The intent is clear. You get one shot, and he had that here. He had that in Federal habeas. He got a de novo merits adjudication. It was appealed, both the underlying claim and the 3599 decision. It cannot now be a defect in the integrity of the proceedings. It doesn't matter if the wrong standard was applied when he had that shot. It doesn't, Your Honor. Again, I would say we can look to Gonzales for that guidance. It was not the fact that the statute of limitations standard that was applied in Gonzales was the defect. It was just that there had been no merits adjudication. They noted and discussed the erroneous standard or the Eleventh Circuit's improper understanding of that within the extraordinary circumstances section, where they ultimately found, as Judge Owen pointed out earlier, that that cannot be an extraordinary circumstance. But that was not the reasoning underlying it. It's also the case, as they pointed out, that even changes in substantive law. Just as a practical matter, if we sent it back to the district court, there would just be a hearing to determine whether or not it was reasonably necessary, the funding he's requesting. Is that what would happen? I'm not sure that there would be a hearing. I think the district court would, as in many other cases that this Court has recently faced, such as Ochoa and Robertson, cases that were pending in this Court on direct appeal when a yes just came out. The district courts do reconsider a yes just in the first instance, but they typically, where the reasoning supports it, affirm their prior decisions without a hearing. And the district court's reasoning — So there wouldn't even have to be a hearing? I don't believe so. I guess I'm trying to figure out what the big deal is if it goes back. It's not going to take a week, a bunch of witnesses and all of that. It goes back. And now you're telling me the judge in the quiet of chambers can review the case and make a determination. But we don't want to burden the district court with having to do that. Well, Your Honor, sorry. I was addressing the direct question of what he would do with a yes just. But if we were to turn back, we would still have to do the 60B analysis. We would not be getting to the propriety of a yes just until we get through the extraordinary circumstances here. So it would involve an analysis, as this Court has noted in multiple other cases, of whether there are extraordinary circumstances here sufficient to reopen the judgment. And there are not. So ultimately, that would be the determination that the district court would find. This Court could also find that with its broad discretion under 28 U.S.C. 2106. You can modify or set aside the judgment and find that as a matter of law, where you accept all the facts, it's true. There are no extraordinary circumstances. However, we still believe that there is not a jurisdiction — there's no jurisdiction here because it is truly a successive petition to my opposing counsel's point earlier. I believe we didn't say that they conceded that it was successive, but they did concede that they would bring a new Sixth Amendment claim. And that concession is itself successive. They said that it was inextricably tied to a Sixth Amendment claim. And that is precisely the logic that we are saying falls within the purview of the successive statute for which he must seek permission from this Court and not properly the basis of a 60B. If the Court has no further questions, then, in sum, because Kretzinger fails to allege, much less establish, a defect in the integrity in the proceedings, his Rule 60B motion is, in fact, a second or successive petition. And I respectfully ask this Court to affirm the district court's transfer order. Thank you. Thank you, Ms. Pindell. Ms. Brandt, you've saved time for rebuttal. Let me address Gonzales the merits that she couldn't find, if I'm looking at the right thing and understood your question, and also the iestas and its citation in Kretzinger. I'm looking at iestas v. Davis, 138 Supreme Court, and it's on page 1093. And it shows that this substantial need issue was brought to the attention of the United States Supreme Court. The Court writes, quote, the difference between reasonably necessary and substantially needed may be small, but the Fifth Circuit exacerbated the problem by invoking precedent to the effect that a habeas petitioner seeking funding must present a viable constitutional claim that is not procedurally barred. And then it cites to Allen, and it says, quoting Kretzinger, describing, quote, our rule that a petitioner cannot show a substantial need for funds when the claim is procedurally barred from review. So certainly the United States Supreme Court had before it this issue of the threshold standard. That's right. That's what they reversed this on in iesta. But I do now have your cert petition, and I don't see where you made the same argument that iesta made, or that, not saying you, but Mr. Kretzinger did. I don't think he – I will look at it carefully after the argument, but it does not seem to be at first blush that you made the same argument that iesta did. Well, could we brief it to the court? Would you allow us to do that? Brief what? What we were arguing and whether or not it was the same as iesta's? We've got your petition. We can decide, I think. Okay. With respect to Gonzales, and I'm not sure if this answers, because I was having a hard time hearing some of what was going back there. It said in Gonzales the Supreme Court held that a Rule 60b motion can be said to bring a claim and hence be a successive application. And I'm looking at page 29 of my brief. Quote, if it attacks the federal court's previous resolution of a claim on the merits, citing Gonzales at 545 U.S. at 532, it goes on to talk about the court observed that the term on the merits has multiple uses, and it clarified that it was specifically referring to attacks on, quote, a determination that there exists or do not exist grounds entitling a petitioner to habeas corpus relief under 2254. In this particular case, again, I don't mean to keep beating the dead horse here, but we're not getting to the substance of a claim. We're getting to the procedure, which is the antecedent. Before you can even file a petition, we need the funding. I'd like to address the issue about Dr. Goodness's report. Dr. Goodness's report is not extra record evidence. Dr. Goodness's report is part of the trial counsel file that we review, and from that trial counsel file it sends up red flags as to what it is we need to further investigate. And so this isn't a review on extra record evidence that was brought in. We're just submitting to the court the kinds of things that we saw when we had the only thing that we could get, which is trial counsel's record, the direct appeal record, that sort of thing, and we review that as part of our due diligence inquiry before we go to the court to request funding, saying these are the kind of red flags that it sets up. So our position is that this is not a successor. Once the case is reopened, the judgment is set aside, the parties are returned back into the original litigation. And so if the court were to provide funding for us, we would develop that extra record evidence as though we were at that procedure. That would not set aside the judgment. You would still have to go in and ask for the judgment to be set aside, right? Well, my understanding is when the 60B is granted, essentially the judgment is going to be vacated. I mean, that's what happened to us in an equitable tolling proceeding that we did under 60B. The judgment was set aside and we went back in. And then we filed our amended petition. The district court's judgment. The district court's judgment, yes. And then we went back in, we filed our petition, and nobody was claiming that that was the successor. We were just getting what it is that we should have gotten to begin with. Thank you. All right, thank you, Ms. Brandt. Your case is under submission and the court is in recess.